**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**COASTAL SERVICES GROUP LLC**                                        **PLAINTIFF**

**V.**                                              **Civil No. 1:11-cv-425-HSO-RHW**

**BP COMPANY NORTH AMERICA, INC.,
BP CORPORATION NORTH AMERICA, INC.,
BP AMERICA, INC., BP P.L.C.,
BP PRODUCTS NORTH AMERICA, INC.,
BP EXPLORATION & PRODUCTION, INC., and
PATRIOT ENVIRONMENTAL SERVICES INC.**                   **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF COASTAL
SERVICES GROUP, LLC'S MOTION [68] FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANT PATRIOT ENVIRONMENTAL
SERVICES INC.'S MOTION [70] FOR SUMMARY JUDGMENT, AND
GRANTING IN PART AND DENYING IN PART DEFENDANT BP'S
MOTION [72] FOR SUMMARY JUDGMENT**</u>

BEFORE THE COURT are three Motions: (1) Plaintiff Coastal Services

Group, LLC's (Coastal's ) Motion [68] for Partial Summary Judgment; (2) Defendant

Patriot Environmental Services Inc.'s ("Patriot's") Motion [70] for Summary

Judgment; and (3) the Motion [72] for Summary Judgment, filed by Defendants BP

Company North America, Inc., BP Corporation North America, Inc., BP America,

Inc., BP Products North America, Inc., and BP Exploration & Production, Inc.

(collectively "BP").  The Motions have been fully briefed.  After due consideration of

the record, the submissions on file, and relevant legal authorities, the Court finds

that Coastal's Motion [68] should be denied, Patriot's Motion [70] should be granted,

and BP's Motion [72] should be granted in part and denied in part.

## I. BACKGROUND

A.    Facts

The overriding issue in this case is whether a six-month minimum term contract for Plaintiff Coastal's recreational vessel decontamination services existed between Defendant BP and Coastal. Coastal is pursuing claims against BP for breach of contract, tortious breach of contract, breach of the duty of good faith and fair dealing, equitable estoppel, unjust enrichment, and specific performance. Coastal's Compl. [1-1] at pp. 5-7.

Coastal also asserts claims for breach of contract, tortious breach of contract, and breach of the duty of good faith and fair dealing against Defendant Patriot. Coastal did not allege in its Complaint that it entered into a contract with Patriot but nevertheless asserted that Patriot was liable for breach of contract. Coastal's Compl. [1-1] at p. 5 ("Plaintiff had a valid and binding contract with Defendant BP; and Defendant BP, along with Patriot, breached that contract, causing Plaintiff monetary damages."). In its briefing on the present Motions, Coastal argues that Patriot is liable in contract as an agent of BP, although Coastal also refers to BP as Patriot's agent. Coastal's Reply [81] at p. 1; Coastal's Resp. [75] at pp. 12, 19.[1] Coastal also now submits that there existed a six-month contract "between BP, Patriot, and Coastal Services" and "Patriot[] accept[ed] the terms" of Coastal's

_____

[1]Coastal submits that "contractual obligations . . . may exist by operation of law or fact between Coastal and Patriot," and "there may in fact be a contractual relationship between Coastal and Patriot due to the underlying, and previously undisclosed, relationship that existed between Patriot and BP." Coastal's Reply [81] at p. 1.

written proposal.  Coastal's Resp. [75] at pp. 12, 19-20.

In response to the 2010 Deepwater Horizon oil spill in the Gulf of Mexico, Coastal performed recreational vessel decontamination services in Pascagoula, Mississippi, at a public boat launch, from August 21, 2010, until approximately October 15, 2010.  BP's Mem. [73] in Supp. of Mot. for Summ.  J. at p. 5, 7-8; Coastal's Mem. [69] in Supp. of Summ. J. at p. 11; Dep. of Don Morrison [68-2] at p. 319.  BP hired Patriot to set up the Pascagoula site, and Patriot provided decontamination services at the site, in addition to overseeing other vendors providing those services.  Dep. of Don Morrison [68-2] at pp. 55-59, 64-65.  BP authorized Patriot to "augment its ranks" by hiring vendors, but BP retained the authority to also hire vendors.  Don Morrison [68-2] at pp. 55-56, 68-69, 126; David Watson Email [75-6].  All contractors, no matter who hired them, required formal approval by BP.  Dep. of Don Morrison [68-2] at p. 62.  While BP ultimately paid for Coastal's services, Patriot forwarded the invoices for Coastal's services to BP, and when those invoices were approved and paid by BP, Patriot forwarded payment to Coastal.  *Id.* at p. 58-59.  For providing these and other managerial services, BP paid Patriot a surcharge equal to seven percent of the amount BP paid to Coastal. Dep. of Don Morrison [68-2] at p. 59; Dep. of Michael Sullivan [75-1] at pp. 146-47.

After approximately two months of work, Bernise Davis, a contract representative of BP, notified Coastal that its services were no longer needed and that it was being "demobilized."  Dep. of Andrew Cambre [72-1] at pp. 89-90; Email from Bernise Davis [68-13].  Coastal contends that its demobilization was unlawful

because it had a six-month minimum term contract with BP. Coastal alleges that this contract was formed at an August 19, 2010, meeting, where BP representatives orally accepted Coastal's written proposal for services. The proposal provided: "These services will be available between the hours of 0800 and 1600 seven days a week for a period not less than six (6) months." Pl.'s Written Proposal [1-1] at p. 8. BP and Patriot deny entering into a contract with Coastal. Dep. of Don Morrison [73-3] at p. 249; BP's Response [78] at p. 7; BP's Reply [83] at p. 6. Patriot maintains that it was "directed by BP on-site personnel to use Coastal Services" as a vendor. Dep. of Michael Sullivan [70-5] at pp. 120-121.

Alternatively, BP and Patriot argue that even if they had accepted the terms of Coastal's written proposal, the six-month provision in the proposal cannot reasonably be interpreted to mean that BP or Patriot was required to utilize Coastal's services for six months. Patriot's Mem. [71] in Supp. of Mot. Summ. J. at pp. 15-16; BP's Mem. [73] in Supp. of Mot. Summ. J. at pp. 5-6. Instead, they argue that the six-month provision can only be interpreted to mean that Coastal was offering to make its services available for no less than six months. Patriot's Mem. [71] in Supp. of Mot. Summ. J. at pp. 15-16; BP's Mem. [73] in Supp. of Mot. Summ. J. at pp. 5-6.

At the August 19, 2010, meeting, Coastal's sole member Andrew Cambre met with James Froebel and Greg Allen, individuals hired by BP through employment agencies. Dep. of Froebel [70-2] at pp. 14, 18, 20-21, 39; Dep. of Don Morrison [68-2] at pp. 318-19; Dep. of Andrew Cambre [68-4] at p. 45-47; BP's Mot. [72] for Summ.

-4-

J. at p. 4.  Plaintiff concedes that no employee or representative of Patriot was

present at the meeting.  Dep. of Andrew Cambre [68-4] at p. 46; Pl.'s Resp. [74] at p.

4 ("Both Mr. Froebel and Mr. Allen were representatives of BP, not Patriot.").

Froebel testified that he retired from BP in 2009 but was hired through ACRO

Service Corporation to oversee the Pascagoula site on behalf of BP.  Dep. of James

Froebel [72-4] at pp. 13-14.  According to BP's 30(b)(6) representative, Don

Morrison, Allen was "employed through O'Brien's [Response Management]" and

reported directly to BP.  Dep. of Don Morrison [73-3] at p. 253.  Froebel arranged

the August 19, 2010, meeting by calling Cambre and testified that he did so based

upon the recommendation of a Pascagoula police officer who told Froebel that "he

knew a guy" who could provide decontamination services at the public boat launch.

Dep. of James Froebel [70-2] at pp. 27-28.[2]

     Coastal's qualifications to provide vessel decontamination services, as well

as Coastal's written proposal, were discussed at the meeting.  Dep. of Andrew

Cambre [68-4] at pp. 47-48; Dep. of James Froebel [70-2] at p. 42.  Neither Cambre

nor Froebel recall any discussion regarding the six-month provision in Coastal's

proposal.  Dep. of Andrew Cambre [68-4] at pp. 48-49; Dep. of James Froebel [70-2]

at p. 41.  Froebel admits that he verbally authorized Coastal to begin work.  Dep. of

James Froebel [70-2] at p. 40.  Cambre contends that he asked Froebel whether a

---

    [2]Just prior to the meeting, BP representatives requested proposals from local
contractors to provide decontamination services.  Emails [74-22][74-23].  They
received Coastal's proposal, and a BP representative placed Coastal on a list of
potential vendors.  Emails [74-22][74-23].

written contract for Coastal's services would be executed.  Dep. of Andrew Cambre [68-4] at pp. 49-50.  According to Cambre, Froebel telephoned Curtis Middleton, a decontamination manager hired by BP through Swift who reported directly to BP. Dep. of Curtis Middleton [68-3] at pp. 9, 35, 84; Dep. of James Froebel [70-2] at pp. 41-42.  Cambre maintains that after speaking with Middleton, Froebel assured him that the written proposal was his contract.  *Id.* at p. 8.  Middleton does not recall a telephone call with Froebel regarding this matter or stating that Coastal's written proposal constituted its contract.  Dep. of Curtis Middleton [68-3] at p. 87.  Froebel does not recall stating to Cambre that Coastal's written proposal was its contract. Dep. of James Froebel [68-5] at p. 69.  Cambre, on the other hand, contends that he "held the [written proposal] up" and said, "[s]o this is my contract?," and Froebel, after contacting Middleton, affirmed that it was.  *Id.* at p. 51.  Cambre admits that he did not ask Froebel or Allen to sign the proposal and that there was no signature line on the proposal.  *Id.*

Froebel "told Mr. Cambre to contact Patriot's Amy Blanchard, who would serve as his "point person for [Coastal] getting paid and submitting invoices."  Dep. of Andrew Cambre [72-1] at pp. 59-60.  Froebel subsequently submitted a requisition form to BP, along with Coastal's written proposal.  Emails and Form 213 [75-10].  Two days after the meeting, Coastal began performing recreational vessel decontamination services in Pascagoula.  BP's Mot. [72] for Summ. J. at p. 5. BP formally approved the requisition of Coastal's services on September 1, 2010. Executed Form 213 [75-10] at p. 10.  Coastal was paid $5,450.00 per day for its

services, the precise rate Coastal had quoted in its written proposal.  Written

Proposal [1-1] at p. 3; Invoices [75-11]; Dep. of Michael Sullivan [74-1] at p. 146.

Almost two months after Coastal was demobilized on October 15, 2010,

Michael Sullivan, an executive of Patriot, emailed Cambre a release form, which

provided that Patriot would forward Coastal's final payment of $27,250.00 upon

Coastal's execution of a release acknowledging that it had been paid in full.  Dep. of

Michael Sullivan [70-5] at p. 223.  Coastal demanded payment from Patriot by

email on December 17, 2010, and represented that it was ready and willing to

continue its services under its alleged six-month contract.  Sullivan Email [75-29] at

p. 2.  Sullivan, on behalf of Patriot responded that

> Coastal does not have a contract with Patriot.  We utilized
> your services at BP's request as a vendor on the gulf coast
> project. . . . I will release this final check to you if you sign
> the conditional release stating Patriot has made all their
> payments to you and Patriot does not owe Coastal any other
> amounts.

*Id.*

Cambre submits that he contacted the state Attorney General's office to

inquire as to whether Patriot could insist upon a release and withhold payment for

work that Coastal had already provided.  Dep. of Andrew Cambre [70-6] at p. 32.

Patriot received a check from BP for Coastal's final services in early December 2010

but did not pay Coastal until March 2011.  Dep. of Michael Sullivan [70-5] at p. 224;

Deposit Notice [75-24]; Dep. of Andrew Cambre [70-6] at p. 33.  Patriot ultimately

paid Coastal after BP directed it to do so without requiring a release.  Dep. of

Michael Sullivan [70-5] at p. 247; Emails [75-22].

B.   Procedural History

On September 29, 2011, Coastal filed its Complaint against BP and Patriot in the Chancery Court of Jackson County, Mississippi.  Coastal's Compl. [1-1].  On November 7, 2011, BP removed the action to this Court.  Not. of Removal [1].  Patriot consented to removal on November 8, 2011.  Joinder [5].  On May 1, 2013, Coastal filed is Motion [68] for Partial Summary Judgment, Patriot filed its Motion [70] for Summary Judgment, and BP filed its Motion [72] for Summary Judgment.

II.   DISCUSSION

A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Melton v. Teachers Ins. & Annuity Ass'n of Am.,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).  However, if the evidence is

merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248).  "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858.  "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

B.   <u>Applicable Law</u>

Where federal jurisdiction is based on diversity, the Court applies state substantive law. *Krieser v. Hobbs,* 166 F.3d 736, 739 (5th Cir. 1999); *see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78-79 (1938).  The parties agree that Mississippi substantive law governs this diversity case.  Coastal is pursuing claims for breach of contract, tortious breach of contract, breach of the duty of good faith and fair dealing, equitable estoppel, unjust enrichment, and specific performance

-9-

     1.    <u>Contract Claims</u>

       a.    <u>Elements of a Contract</u>

"The elements of a contract are (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite; (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *GGNSC Batesville, LLC v. Johnson,* 109 So. 3d 562, 565 (Miss. 2013)(internal citations omitted).

       b.    <u>Oral Contracts</u>

"As a general rule, Mississippi law does not require that contracts be made in writing.  Put otherwise, oral contracts are ordinarily no less enforceable than others." *Putt v. City of Corinth,* 579 So. 2d 534, 538 (Miss. 1991).  "The existence of an oral contract is a fact issue." *R.C. Constr. Co., Inc. v. Nat'l Office Systems, Inc.,* 622 So. 2d 1253, 1255 (Miss. 1993).

       c.    <u>Contract Interpretation</u>

Under Mississippi law, judicial review and interpretation of contracts involves a three-step analysis. *Epperson v. SOUTHBank,* 93 So. 3d 10, 16 (Miss. 2012).  First, the Court must determine if the contract is ambiguous, and if it is not, then it must be enforced as written. *Id.*  "In making that determination, the Court must review the express wording of the contract as a whole." *Id.*  "Second, if the Court is unable to ascertain the meaning of the contract and the intent of the parties within the 'four corners' of the contract, [the Court] will apply the 'canons of contract construction.'" *Id.*  "Third, if the meaning of the contract is still ambiguous,

only then is extrinsic evidence considered." *Id.* "In a summary judgment case, the reviewing Court need not go through the entire three-step analysis; the Court should determine only whether the contract is ambiguous." *Id.* "Questions of contract construction and ambiguity are 'questions of law that are committed to the court rather than questions of fact committed to the fact finder.'" *Id.* (citing *Royer v. Homes of Miss., Inc. v. Chandeleur Homes, Inc.,* 857 So. 2d 748 (Miss. 2003)). "If the reviewing Court finds the terms of the contract to be ambiguous or subject to more than one interpretation, the case must be submitted to the trier of fact, and summary judgment is not appropriate." *Id*; *see Specialty Rental Tools & Supply, L.P. v. Shoemaker,* 2007 WL 4532187, *5 (S.D. Miss. Dec. 18, 2007).

      2.   <u>Equitable Estoppel</u>

Equitable estoppel is defined generally as "the principle by which a party is precluded from denying any material fact, induced by his words or conduct upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was allowed." *Kimball Glassco Residential Ctr., Inc. v. Shanks,* 64 So. 3d 941, 947 (Miss. 2011)(internal quotation omitted). A party asserting equitable estoppel must show "(1) belief and reliance on some representation; (2) change of position as a result thereof; and (3) detriment or prejudice caused by the change of position." *Cothern v. Vickers, Inc.,* 759 So. 2d 1241, 1249 (Miss. 2000). "Equitable estoppel is an extraordinary remedy that should be used with caution." *Simmons Housing, Inc. v. Shelton ex rel. Shelton,* 36 So. 3d 1283, 1287 (Miss. 2010).

3.     Unjust Enrichment

Unjust enrichment applies to situations "where there is no legal contract and 'the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.'" *Powell v. Campbell,* 912 So. 2d 978, 982 (Miss. 2005)(citing *Koval v. Koval,* 576 So. 2d 134, 136 (Miss. 1991)).

C.     Coastal's Motion for Summary Judgment and BP's Motion for Summary Judgment

1.     Coastal's Breach of Contract Claim Against BP

In its Motion [68] for Summary Judgment, Coastal requests that the Court find, based on the record and as a matter of law, that BP breached an alleged six-month contract with Coastal.  In its Motion [72] for Summary Judgment, BP requests that the Court reach the opposite conclusion.  The Court finds that genuine issues of material fact exist regarding whether BP orally accepted the terms of Coastal's written proposal.[3]  The Court further finds that Coastal's written proposal is ambiguous and subject to more than one interpretation.  As Coastal argues, the proposal could be interpreted to mean that Coastal was offering its services for a minimum term of six months.  As BP argues, it could also be

---

[3] Assuming that Froebel and Middleton orally accepted Coastal's written proposal as a contract, BP maintains that neither Froebel nor Middleton had authority to contract on behalf of BP.  BP's Mem. [73] in Supp. of Summ. J. at p. 5; *see* Dep. of Don Morrison [68-2] at pp. 152, 155.  BP's 30(b)(6) representative, Don Morrison, concedes, however, that "[t]here would have been probably no way for Mr. Cambre to know that."  Dep. of Don Morrison [68-2] at pp. 318-19.

interpreted as merely an offer by Coastal to make its services available for no less than six months.  Neither Coastal nor BP should be granted summary judgment on Coastal's breach of contract claim against BP.

      2.    <u>Coastal's Tortious Breach of Contract, Breach of Duty of Good Faith and Fair Dealing, and Specific Peformance Claims Against BP</u>

BP requests summary judgment in its favor on Coastal's claims for tortious breach of contract, breach of the duty of good faith and fair dealing, and specific performance.  BP.'s Mem. [73] in Supp. of Mot. for Summ. J. at p. 9, 12 n.2.  BP has not, however, adequately briefed the issues related to these claims and therefore has not carried its initial summary judgment burden.  These claims will therefore proceed to trial.

      3.    <u>Coastal's Equitable Estoppel Claim Against BP</u>

BP requests summary judgment in its favor on Coastal's equitable estoppel claim.  BP's Mot. [72] for Summ. J. at p. 8.  Assuming that BP represented to Cambre that Coastal was guaranteed six months of work, BP asserts that Coastal "has not alleged that it could or would have taken its services elsewhere . . . had [BP] only promised an as-needed contract."   BP's Mem. [73] in Supp. of Mot. for Summ. J. at p. 14.  BP argues that Coastal also cannot establish detrimental reliance because Coastal made a substantial profit for the two months that it provided services.  *Id.* at p. 14.

In support of its equitable estoppel claim, Coastal submits that Cambre quit his secure and profitable job, procured a loan against his home, purchased thousands of dollars worth of equipment, and offered BP discounted prices based

upon a six-month guaranty of work.  Coastal's Resp. [74] at pp. 24-26.  There is evidence in the record that both supports and contradicts Coastal's contention that it detrimentally relied on BP's alleged representation that Coastal was guaranteed six months of work.  Genuine issues of material fact preclude summary judgment on Coastal's equitable estoppel claim against BP.

    4.    <u>Coastal's Unjust Enrichment Claim Against BP</u>

BP requests summary judgment in its favor on Coastal's unjust enrichment claim.  BP's Mot. [72] for Summ. J. at p. 8.  Coastal submits that summary judgment should be denied for the same reasons that summary judgment should be denied on its equitable estoppel claim.  Coastal maintains that, in reliance on BP's alleged promise of six months of work, Cambre quit his job, procured a loan against his home, purchased thousands of dollars of equipment, and could not perform other work because of its alleged six-month commitment to BP.  Coastal's Resp. [74] at pp. 27-28.

BP argues that Coastal cannot recover on a theory of unjust enrichment because BP paid Coastal for every day that it worked and did not retain any of Coastal's equipment.  BP's Mem. [73] in Supp. of Mot. for Summ. J. at p. 16.  BP maintains that Coastal is "essentially arguing a breach of contract claim disguised as unjust enrichment" because "the only remaining payments Coastal alleges BP owes are pursuant to the alleged six-month term agreement."  BP.'s Reply [83] at p. 16.

Unjust enrichment applies to situations where there is no legal contract.

Recovery on the basis of unjust enrichment has been allowed where payment was made to another by mistake and where one party accepted services but did not compensate the other party. *Willis v. Rehab Solutions, PLLC,* 82 So. 3d 583 (Miss. 2012); *Tupelo Redevelopment Agency v. Gray Corp., Inc.,* 972 So. 2d 495 (Miss. 2007). The relief Coastal seeks falls under neither scenario. Coastal has submitted no authority supporting recovery for unjust enrichment under the circumstances presented in this case. BP should be granted summary judgment on Coastal's unjust enrichment claim.

D.   <u>Patriot's Motion for Summary Judgment</u>

   1.   <u>Coastal's Contract-Based Claims Against Patriot</u>

Coastal asserts claims for breach of contract, tortious breach of contract, and breach of duty of good faith and fair dealing against Patriot. At his deposition on behalf of Coastal as its 30(b)(6) representative, however, Cambre testified:

> Q:   Did you have a contract with Patriot Environmental
>       Services?
> A:   No, I did not.
> Q:   Okay. So your complaint against Patriot is the delay
>       in payment; is that correct?
> A.   Correct.

Dep. of Andrew Cambre [70-6] at p. 18.

Coastal nevertheless points to the following as its grounds for holding Patriot liable in contract: (1) BP's 30(b)(6) representative testified that it was BP's position that a contract existed between Patriot and Coastal; (2) representatives of BP and Patriot referred to Coastal as Patriot's subcontractor; (3) Patriot's 30(b)(6) representative testified that Patriot could hire subcontractors and that it sometimes

did so through verbal agreements; (4) Coastal's services were "sourced" through Patriot; (5) "Patriot billed BP a surcharge for work performed by Coastal, when under Patriot's [Master Services Agreement with BP,] such surcharges were allowed only for 'subcontractors' of Patriot;" (6) Patriot participated in the process of demobilizing Coastal; and (7) Patriot withheld Coastal's final payment and insisted that Coastal sign a document releasing Patriot from liability.  Coastal's Reply [81] at pp. 2-7; Coastal's Resp. [75] at p. 12.

Coastal's attempt to establish Patriot's liability for breach of contract is not legally supported and insufficient to withstand summary judgment.  Even under Coastal's version of events, its dealings in negotiating and executing the alleged six-month contract were with BP.  Cambre submits that (1) representatives of BP, not Patriot, contacted him regarding Coastal providing decontamination services; (2) no Patriot representatives were present at the August 19, 2010, meeting; (3) BP representatives Froebel and Middleton orally accepted Coastal's written proposal; (4) BP representative Froebel authorized Coastal to begin work immediately; and (5) BP representative Froebel submitted a requisition form for Coastal's services.  These admissions foreclose any genuine argument that Patriot entered into a six-month contract with Patriot.  They also foreclose any agency theory of recovery against Patriot because Coastal concedes that Patriot was not involved during the alleged formation of the contract.  Patriot should be granted summary judgment on Coastal's breach of contract claim.  Because Coastal's claims against Patriot for tortious breach of contract and breach of the duty of good faith and fair dealing each

hinge on the existence of Patriot's contractual liability, these claims should also be dismissed.

       2.     <u>Coastal Has Not Stated a Tort Claim Against Patriot</u>

Coastal also maintains that it should recover against Patriot because Patriot withheld Coastal's final payment for nearly four months while insisting that Coastal first execute a release in Patriot's favor.  Coastal's Resp. [75] at pp. 21-26. Coastal asserts that, "[w]hether or not Patriot had a contract with Coastal, it cannot escape liability for its tortious conduct related to the breach of Coastal's contract with BP."  Coastal's Reply [81] at p. 5.  It later argues that Patriot is liable to Coastal because Patriot "acted in bad faith and breached its duty of good faith and fair dealing."  Coastal's Resp. [75] at p. 20.

The Court has already determined that Coastal's contract-based claims against Patriot should be dismissed, and the only claims asserted by Coastal against Patriot are contract-based claims.  Coastal's Compl. [1-1] at pp. 5-7.[4] Coastal's Complaint does not assert a claim upon which Patriot could he held liable for withholding Coastal's final payment.  Patriot's Motion [70] for Summary Judgment should be granted, and Patriot should be dismissed with prejudice as a party to this suit.

## III. <u>CONCLUSION</u>

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff

---

[4]Coastal's claims for equitable estoppel, unjust enrichment, and specific performance are only asserted against BP.  Coastal's Compl. [1-1] at pp. 5-7.

Coastal Services Group, LLC's ("Coastal's") Motion [68] for Partial Summary Judgment, is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Patriot Environmental Services Inc.'s ("Patriot's") Motion [70] for Summary Judgment, is **GRANTED**. Coastal's claims against Patriot are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion [72] for Summary Judgment, filed by Defendants BP Company North America, Inc., BP Corporation North America, Inc., BP America, Inc., BP Products North America, Inc., and BP Exploration & Production, Inc. (collectively "BP"), is **GRANTED IN PART AND DENIED IN PART**. Coastal's claim against BP for unjust enrichment is **DISMISSED WITH PREJUDICE**. Patriot's remaining claims for breach of contract, tortious breach of contract, breach of the duty of good faith and fair dealing, equitable estoppel, and specific performance will proceed to trial.

**SO ORDERED AND ADJUDGED**, this the 30th day of August, 2013.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE